FILED

2021 Oct-20  AM 10:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | | |
|---|---|---|
| SHOMARI BURRELL, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 7:19-cv-01704-LSC |
| UNITED PARCEL SERVICE, INC., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

## I.  INTRODUCTION

Plaintiff Shomari Burrell ("Plaintiff" or "Burrell"), an African American male, brings this action against his employer, United Parcel Service, Inc. ("UPS"). Burrell asserts claims of racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

Presently before the Court is UPS's Motion for Summary Judgment (Doc. 33). The motion has been fully briefed and is ripe for review. For the reasons stated below, UPS's Motion for Summary Judgment is due to be GRANTED.

## II.  BACKGROUND[1]

---

[1]    The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes

## A.   BURRELL'S EMPLOYMENT AT UPS

Burrell began working as an automotive mechanic at the UPS center in Tuscaloosa, Alabama in 2012. (Doc. 1 at 3.) UPS is a unionized workplace, and UPS mechanics are members of the collective bargaining unit. (Doc. 34 at 3.) The collective bargaining agreement ("CBA") governs the employment relationship between collective bargaining unit employees and UPS. (*Id.* at 4.) The CBA governs all aspects of employment, including how and when disciplinary actions may be taken against bargaining unit employees. (*Id.*) Those in management at UPS are not members of the collective bargaining unit and are not governed by the CBA. (*Id.*) Under Article 52 of the CBA, dishonesty is a violation that may result in immediate termination. (*Id.*) Prior to being hired by UPS, Burrell was aware that dishonesty could result in termination. (*Id.*) Falsifying a timecard is a dishonesty violation under the CBA. (*Id.* at 5.)

## B.   BURRELL'S TIMECARD INCIDENTS

---

only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . .").

On November 11, 2014, Burrell was discharged for indicating on his timecard that he was working while he was found to have been asleep on the job. (Doc. 35–3 at 17 & 19.) Burrell filed a grievance under the CBA seeking to have his discipline reduced. (*Id.* at 17.) Subsequently, Burrell's discharge was reduced to time-served suspension without pay. (*Id.* at 19.) In return, Burrell committed to follow UPS methods and procedures. (*Id.*)

In June of 2018, Automotive Supervisor, Jeremy Black ("Black"), a Caucasian male, discovered various automotive parts in a locked container. (Doc. 35–32 at 15; Doc. 38–1 at 55.) Black assessed the parts and determined that Burrell pulled the parts but failed to install them on vehicles, despite his timecards reflecting installation of the parts. (Doc. 35–32 at 15.) Black reported to the Area Automotive Manager, Keith Washington ("Washington"), an African American male, and informed him of this incident. (Doc. 38–1 at 21.)

On June 20, 2018, at a subsequent meeting regarding the incident, Burrell explained that he was storing parts for later use and that he had installed component parts in other vehicles. (Doc. 35–3 at 6 & 10.) Ultimately, Washington decided to terminate Burrell for falsifying his timecards, an act of dishonesty under the CBA. (Doc. 35–3 at 8; Doc. 35–32 at 15; Doc. 38–1 at 21.) Burrell filed a grievance contesting the discharge. (Doc. 35–3 at 9.) Following a hearing, Burrell's discharge

was reduced to a time-served suspension without pay. (*Id.* at 11.) Burrell returned to work at UPS approximately three weeks later. (*Id.*) On November 27, 2018, within 180 days of the last discriminatory act of which Burrell complains, Burrell filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Burrell's Dismissal and Notice of Rights was mailed by the EEOC to Burrell on July 19, 2019. Burrell filed this case within ninety days of receipt on October 17, 2019.

## C.    BLACK'S TIMECARD INCIDENT

After June 2018, Black hired Joseph Deal ("Deal"), a Caucasian male, as a second mechanic at the UPS center in Tuscaloosa. (Doc. 39 at 14.) On the final day of Deal's training, Black ended the training four hours early but did not indicate this on Deal's timecard. (Doc. 34 at 11.) Thus, Deal received compensation for a full eight hours for the four-hour training shift. (*Id.*) Burrell later learned that Black falsified Deal's timecard and he filed a grievance under the CBA against Black for race discrimination. (*Id.*) Burrell alleges that Black's previous decision to discharge him for falsifying his timecards was discriminatory, as Black himself later falsified the timecard belonging to Deal, a Caucasian employee. (Doc. 39 at 9). Burrell also notes that the only other African American mechanic under Black's supervision, Charlie White, was terminated. (*Id.* at 28.)

This matter was reportedly identified as a "no contract violation," because Black, as a member of management, was not governed by the CBA, and because Burrell could not raise a grievance based on discipline taken against another employee. (Doc. 35–1 at 2–3.) However, Black informed Washington that he had falsified Deal's timecard, and Washington issued Black a verbal reprimand. (Doc. 35–33 at 37.) On January 17, 2019, four months after filing the grievance against Black, Burrell received a written warning notice from Black for failure to follow proper methods, procedures, and instructions. (Doc. 35–3 at 17.) The warning was specifically for failing to follow Black's instruction to update timecards more frequently throughout the day. (*Id.*) Deal received a substantially identical warning notice on the same day. (*Id.*)

## III. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact[2] and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine

---

[2]    A material fact is one that "might affect the outcome of the case." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1049 (11th Cir. 2015).

dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence but determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the nonmoving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the

nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013).   Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

## IV.   DISCUSSION

### A.   Race Discrimination

Burrell brings a claim of racial discrimination under Title VII and 42 U.S.C. § 1981.  Under Title VII and Section 1981, an employer may not discharge or otherwise discriminate against an employee because of race. *See 42 U.S.C. § 2000e-2 (a) (1)*; *see also 42 U.S.C. § 1981*. To establish a Title VII claim, a plaintiff may proffer either direct or circumstantial evidence of discrimination. *Jefferson v. Sewon America, Inc*, 891 F.3d 911, 920 (11th Cir. 2018). Direct evidence of discrimination consists of "only the most blatant remarks, whose intent could mean nothing other than to discriminate." *Rojas v. Florida,* 285 F.3d 1339, 1342 n. 2 (11th Cir.2002) (quoting *Schoenfeld v. Babbitt,* 168 F.3d 1257, 1266 (11th Cir.1999)).

Because Burrell neither offers nor contends there was direct evidence of racial discrimination, this Court must evaluate whether he has produced sufficient circumstantial evidence of racial discrimination. Absent direct evidence of racial discrimination or retaliation, such as specific statements made by the employer's representatives, a plaintiff may demonstrate circumstantial evidence of disparate treatment through the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Tex. Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248 (1981).

Under this framework, the aggrieved employee creates a presumption of unlawful discrimination by first establishing a *prima facie* case of discrimination. *See Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc). The burden then shifts to the employer "to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221 (citing *Burdine*, 450 U.S. at 253). The burden at this stage "is exceedingly light." *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983). It is merely a burden of production, not a burden of proof. *Id.* If the employer proffers a legitimate, nondiscriminatory reason, the burden returns to the employee to prove that the employer's reason is a pretext for unlawful discrimination. *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008).

Although the *McDonnell Douglas* framework is one way of showing discriminatory intent, it is not the only way to show discriminatory intent in a Title VII discrimination claim. *See Smith v. Lockheed–Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). "[T]he plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Id.*

### 1. McDonnell Douglas Framework

Burrell argues that the *McDonnell Douglas* burden-shifting framework is inapplicable in light of the Supreme Court's decision in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020). (Doc. 39 at 27.) In *Bostock*, the Supreme Court held that "[a]n employer who fires an individual merely for being gay or transgender defies the law" as that employment decision inherently takes into consideration an individual's sex. *Id.* at 1754. The Court made no ruling on the applicability of the *McDonnell Douglas* framework. Rather, the Court examined the statutory text of Title VII, and discussed what it means to be discriminated against "because of" a protected characteristic, and what constitutes "but for" causation. *Id.* at 1739–40, 1743.

The *McDonnell Douglas* framework is an evidentiary framework to help courts determine whether a plaintiff has submitted sufficient evidence to create a triable

issue of fact to submit to a jury. The Eleventh Circuit has continued to apply the *McDonnell Douglas* burden-shifting framework to analyze Title VII claims post-*Bostock*, as have other circuits. *See, e.g.*, *Williams v. Hous. Auth. of Savannah, Inc.*, 834 F. App'x 482, 488 (11th Cir. 2020) (per curiam)[3]; *see also Riney v. Lockheed Martin Corp.*, 831 F. App'x 698, 701–02 (5th Cir. 2020) (per curiam); *Henderson v. Mass. Bay Transp. Auth.*, 977 F.3d 20, 29–30 (1st Cir. 2020); *Marshall v. Ind. Dep't of Corr.*, 973 F.3d 789, 791–92 (7th Cir. 2020); *Black v. Grant Cnty. Pub. Util. Dist.*, 820 F. App'x 547, 550 (9th Cir. 2020). There is no authority to support Burrell's position that *Bostock* abandoned the *McDonnell Douglas* framework for Title VII claims; therefore, this Court continues to apply traditional methods of analyses to Burrell's claims.

### a. *Prima Facie* Case

Burrell contends that he was discriminated against based on his race when UPS discharged him in June 2018 for falsifying his timecard. (Doc. 1.) To establish a *prima facie* case for race discrimination, a plaintiff must show: (1) he is a member of a protected class, (2) he was qualified for his position, (3) he was subjected to an adverse employment action, and (4) he was treated less favorably than similarly

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

situated individuals outside his protected class.  *See Lewis*, 918 F.3d at 1221.  To satisfy the fourth prong of the *prima facie* case, the proffered comparator must be similarly situated to the plaintiff "in all material respects."  *Id.* at 1226.

As the Eleventh Circuit has explained, "a valid comparison will turn not on formal labels, but rather on substantive likenesses."  *Lewis*, 918 F.3d at 1228.  While the precise "similarity" is "to be worked out on a case-by-case basis," a similarly situated comparator "will have engaged in the same basic conduct (or misconduct) as the plaintiff"; "will have been subject to the same employment policy"; "will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor"; and "will share the plaintiff's employment or disciplinary history."  *Id.* at 1227–28. Unionized employees are not similarly situated with non-unionized employees. *See Donnell v. Lee Cty. Port Auth.*, 509 F. App'x 903, 905 (11th Cir. 2013) (citing *Marshall v. W. Grain Co., Inc.*, 838 F.2d 1165, 1170 (11th Cir. 1988) (denying Title VII discrimination claim)).

It is undisputed that Burrell satisfies the first three prongs of a *prima facie* case. The parties dispute whether Burrell has provided any similarly situated comparators to satisfy his *prima facie* case. Burrell provides two comparators: Black and Deal. However, neither comparator is "similarly situated" to Burrell under *Lewis*.

Here, Black is not an appropriate comparator to Burrell. At the time of the incidents at issue, Black was a non-unionized manager, and Burrell was a unionized employee. Black and Burrell were not subject to the same employment and disciplinary policies. Burrell, as a union employee, was subject to Article 52 of the CBA, and Black was not. Because union and non-union employees are subject to different employment and disciplinary policies at UPS, Black is not similarly situated to Burrell for purposes of satisfying Burrell's *prima facie* case of race discrimination. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1326–27 (11th Cir. 2011) (finding employees were not comparators because they were subject to different policies).

Likewise, Deal is not an appropriate comparator to Burrell. Though Deal was a unionized mechanic at UPS like Burrell, Deal did not engage in misconduct similar to Burrell. Burrell was terminated in June of 2018 after Black discovered various automotive parts in a locked container. Black assessed the parts and determined that Burrell pulled the parts but failed to install them on vehicles, despite his timecards reflecting installation of the parts. Burrell was terminated because of this falsification on his timecard. On the other hand, Deal's timecard was falsified by Black. Black submitted Deal's timecard for him and entered hours Deal did not work. Thus, Deal did not take any affirmative steps to be dishonest with UPS. However, Burrell did.

Burrell was subjected to disciplinary action for his act of dishonesty. Deal was not subjected to disciplinary action, because he did not engage in an act of dishonesty.

Further, comparators will usually "share the plaintiff's employment or disciplinary history." *Lewis*, 918 F.3d at 1228. Here, this is not the case. In 2014, Burrell fell asleep on the job and then falsified his own timecard to show he was working during that time. Burrell's falsification of his timecard in 2018 was his second timecard related incident. Accordingly, Burrell and Deal do not share the same disciplinary history and are not proper comparators.

Plaintiff argues that summary judgment is inappropriate because Deal actively participated in falsifying his timecard and failed to report Black for entering hours in which Deal did not work. (Doc. 39 at 28–29.) However, even viewing the evidence in the light most favorable to Burrell, a reasonable jury could not conclude that Burrell and Deal were similarly situated in all material respects. There is a difference between falsifying your own timecard and having a supervisor enter false time for you. Further, there is no evidence that Deal even knew that this was a dishonest act under UPS's policies. Yet, Burrell knew that falsifying his own time was a dishonesty violation that could end in his termination. (Doc. 34 at 4.)

In sum, Burrell has not met his burden to provide a similarly situated comparator who engaged in similar conduct and was treated differently from Burrell.

As Burrell has not provide any similarly situated comparators, he has not stated a *prima facie* case of discrimination. Accordingly, UPS's motion is due to be granted.

### b. Legitimate, Nondiscriminatory Reason

Even if Burrell had stated a *prima facie* case of race discrimination, UPS argues that it had a legitimate, nondiscriminatory reason for terminating Burrell. UPS contends that Burrell was terminated for indicating on his timecards that various automotive parts had been installed in vehicles when those parts were later discovered unused in a locked bin. (*Id.* at 21.) Burrell does not contest that UPS had a legitimate, nondiscriminatory reason in his brief opposing summary judgment. However, even if he had, falsifying timecards is an act of dishonesty under the CBA and is punishable by discharge. Accordingly, UPS has satisfied its exceedingly light burden of production. As UPS has met its burden of production, the burden shifts back to Burrell to demonstrate that UPS's reason was pretextual.

### c. Pretext

Burrell does not argue that UPS's proffered reason for his discharge is a pretext for race discrimination. Instead, Burrell just states the legal standard for evaluating pretext. A "plaintiff can show pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly

by showing that the employer's proffered explanation is unworthy of credence,'"
*Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012) (quoting
*Burdine,* 450 U.S. at 256), such that a rational trier of fact could disbelieve the
employer's proffered nondiscriminatory reason, *Wilson v. B/E Aerospace, Inc.*, 376
F.3d 1079, 1088 (11th Cir. 2004). A *prima facie* case plus sufficient evidence of
pretext may permit the factfinder to find unlawful discrimination, making summary
judgment inappropriate.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133,
148 (2000). Again, Burrell has not argued and has not presented any evidence that
UPS's reason for terminating his employment was pretextual. Thus, even if Burrell
had stated a *prima facie* case of race discrimination, UPS's motion is due to be
granted because Burrell failed to demonstrate UPS's reason for termination was
pretextual.

### 2.  Convincing Mosaic

An employee may survive summary judgment if a jury may infer intentional
discrimination from a "convincing mosaic" of circumstantial evidence. *Lewis v. City
of Union City, Georgia*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quoting *Smith v.
Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). An employee may
establish a convincing mosaic through evidence such as "(1) 'suspicious timing,
ambiguous statements..., and other bits and pieces from which an inference of

discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Id.* (quoting *Silverman v. Bd. Of Educ. Of City of Chi.*, 637 F.3d 729, 733–34 (7th Cir. 2011)). Burrell has not painted a "convincing mosaic" of discrimination from circumstantial evidence.[4]

Burrell bears the burden of creating "an inference of discriminatory intent" as to his employer's conduct. *Lewis*, 934 F.3d at 1185. He has offered no evidence to create such an inference regarding UPS's decision to terminate him. Burrell has not suggested that anyone made racially insensitive comments or engaged in racially insensitive conduct during his time at UPS. Moreover, Burrell has not indicated that anyone at UPS said or did anything that was remotely racially insensitive. As discussed above, Burrell has not shown systematically better treatment of similarly situated employees because Deal and Black are not similarly situated. Also, as mentioned above, Burrell does not contend that UPS's proffered reason for his termination was pretextual. Accordingly, Burrell has not met his burden of creating

---

[4] The Court notes that Burrell merely states what the legal standard is for a convincing mosaic of racial discrimination in his response brief. He does not proceed to make a discrete argument as to why his claims should move forward under this this theory. However, it appears to the Court as if Burrell has scattered his mixed motive argument throughout other sections in his response brief. And, UPS responded to Burrell's argument in its reply brief. Thus, the Court will also address Burrell's claims under the convincing mosaic standard.

"an inference of discriminatory intent" and this Court finds that Burrell has not presented a "convincing mosaic" of racial discrimination as to survive a motion for summary judgment. Thus, UPS's motion is due to be granted as to the racial discrimination claim.

### 3.  Race as a Motivating Factor

Burrell also asserts that his race was a motivating factor in UPS's decision to terminate his employment.[5] To succeed under a mixed-motive theory of liability, a plaintiff must show "that illegal bias, such as bias based on [race], 'was a motivating factor for' an adverse employment action, 'even though other factors also motivated' the action." *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (quoting 42 U.S.C. § 2000e-2(m)). This can be accomplished by presenting either direct or circumstantial evidence of discrimination. *See id.* (citing *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99–102 (2003)). But it is inappropriate to use the *McDonnell Douglas* burden-shifting framework to evaluate mixed-motive claims at summary judgment. *Id.* at 1238. Instead, "[t]o avoid summary judgment, a plaintiff raising a mixed-motive claim must offer 'evidence sufficient to convince a

---

[5]     The Court also notes that Burrell merely states what the legal standard is for mixed motive claims in his response brief. He does not proceed to make a discrete argument as to why his claims should move forward under this this theory. However, it appears to the Court as if Burrell has scattered his mixed motive argument throughout other sections in his response brief. Thus, the Court will also address Burrell's claims under a mixed motive theory of liability.

jury that: (1) the [employer] took an adverse employment action against [him]; and (2) a protected characteristic was *a* motivating factor for the [employer's] adverse employment action.'" *Bowen v. Manheim Remarketing, Inc.*, 882 F.3d 1358, 1364 (11th Cir. 2018) (quoting *Quigg*, 814 F.3d at 1239). "In other words, the court must determine whether the 'plaintiff has presented sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that [his protected characteristic] was a motivating factor for [an] adverse employment decision.'" *Quigg*, 814 F.3d at 1239 (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 401 (6th Cir. 2008)). An employer may terminate an employee for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all." *Flowers v. Troup Cnty, Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015) (quoting *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984)). An employer is merely prohibited from terminating an employee because of that employee's protected characteristic. *See id.*

It is undisputed that Burrell suffered an adverse employment action, thus the only issue is whether his termination was in part motivated by his race. Burrell has not presented any evidence from which a reasonable jury could conclude that he was terminated in part because he is African American. Burrell argues that "white employees were treated more favorably," asserting that this demonstrates he was

discriminated against because of his race. (Doc. 39 at 31.) As discussed above, whether white employees were treated more favorably is not the correct inquiry for this Court. Instead, this Court must determine whether similarly situated comparators, who engaged in similar conduct, were treated differently from Burrell. As previously mentioned, this Court concludes that no similarly situated employees were treated differently from Burrell.

Burrell also argues that UPS never investigated his grievance against Black which demonstrates UPS's intent behind the termination was racial discrimination. (*Id.*) Yet the record contradicts this claim. Washington testified in his deposition that he received the grievance and met with Black, security, and human resources employee Ken Glass. (Doc. 35–33 at 17.) Washington and Mr. Glass then instructed Black that he was not allowed to enter time for which employees did not work and issued him a verbal reprimand. (*Id.* at 17 & 24.) It is clear to this Court that Burrell believes that he was treated unfairly and that his grievance wasn't taken seriously. However, it is not the role of the Court to determine whether UPS's decision was fair. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). The Court's role is to determine if Burrell has provided evidence to create a triable issue of fact as to whether his race was a motivating factor in his termination,

which he has not. Accordingly, UPS's motion is also due to be granted under a mixed-motive theory of liability.

## B.    Retaliation

Burrell also brings a claim of retaliation under Title VII.  Burrell claims that the written warning he received for failure to follow proper procedures in January of 2019 was unlawful retaliation for his grievance against Black. (Doc. 39 at 23.) To successfully establish a *prima facie* case of retaliation, Plaintiff must demonstrate that (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action.  *See Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181 (11th Cir. 2010). Causation may be inferred from close temporal proximity between the protected activity and the adverse employment action. *James v. City of Montgomery*, 823 Fed. App'x 728, 735 (11th Cir. 2020) (citing *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)). However, a three-to-four-month period between the protected activity and adverse employment action is insufficient. *Id.* If a plaintiff establishes a *prima facie* case of retaliation, the burden of production shifts to the employer to proffer a legitimate, nondiscriminatory reason for adverse employment action.  *See Brown*, 597 F.3d at 1181.

Burrell cannot make out a *prima facie* case of retaliation. Burrell has failed to establish a causal link between the grievance he filed against Black in September of 2018 and the written warning he received four months later in January of 2019. Here, a four-month period existed between the protected activity and the adverse employment action. This four-month period does not allow an inference of causation to be made from close temporal proximity. *Cooper Lighting*, 506 F.3d at 1364. Additionally, Burrell has not met his burden of establishing a causal link because Deal also received a substantially identical warning letter on the same day for failing to update his timecard. Thus, nothing suggests that this warning letter was in any way tied to his grievance against Black.

Even if Burrell could demonstrate causation, Burrell has not suffered an adverse employment action, as he only received a written warning for failure to follow proper procedures. Where a letter of warning has no effect on employment, it does not constitute an adverse employment action. *See Clark v. Potter*, 232 Fed. App'x 895, 897 (11th Cir. 2007). Because Burrell has not presented any evidence that it had an effect on his employment, it does not rise to the level of adverse employment action contemplated for a *prima facie* case of retaliation.

For the reasons explained above, Burrell has failed to establish a *prima facie* case of retaliation. However, even if Burrell had established a *prima facie* case of

retaliation, UPS proffered a legitimate, nondiscriminatory reason for the warning notice Burrell received in January of 2019. Specifically, Burrell received the warning notice for failing to follow Black's instruction to update his timecards more frequently throughout the day. (Doc. 35–3 at 17.) Because Burrell failed to establish a *prima facie* case of retaliation, and because UPS had a legitimate, nondiscriminatory reason for issuing the written warning, summary judgment is due to be granted as to Burrell's claim of retaliation.

## V.   CONCLUSION

For the reasons stated above, UPS's Motion for Summary Judgment (Doc. 33) is due to be GRANTED. An Order consistent with this Opinion will be entered contemporaneously herewith.

**DONE** and **ORDERED** on October 20, 2021.

_____
L. Scott Coogler
United States District Judge

206770